CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

9/17/19
JULIA C. DUDLEY, CLERK
BY: s/ ELLA SURBER
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COBALT COAL, LTD, ) <br> AL KROONTJE, ) <br> ) <br> Defendants. ) <br> ) | Case No. 2:19CV41 <br><br> Related Action: <br> Case No. 17-mc-18 |

**COMPLAINT TO VOID FRAUDULENT TRANSFERS
AND FOR OTHER CIVIL RELIEF**

The National Labor Relations Board ("the Board") hereby seeks relief pursuant to the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001, 3301-3308, to void certain liens voluntarily imposed against the assets of Defendant Cobalt Coal, Ltd. ("Cobalt") on behalf of Defendant Al Kroontje as fraudulent with regard to a debt owed by Defendant Cobalt to the Board. The Board further pleads as follows:

**Jurisdiction and Venue**

1. This court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1345.

2. This court has personal jurisdiction over the defendants because at all material times both defendants have been engaged in and actively carrying on business pertaining to the activities of a coal mine located in the Wise County, Virginia.

1

3. Cobalt is a limited corporation organized under the laws of the province of Alberta, Canada.

4. Al Kroontje has been, at all material times, a resident of Alberta, Canada.

5. Venue in this district is appropriate under 28 U.S.C. § 1391(c)(3), providing that venue is proper in any judicial district as to a defendant not resident in the United States.

## Parties to the Case

6. Plaintiff Board is an independent agency of the United States, 29 U.S.C. § 153(a), which is "empowered . . . to prevent any person from engaging in any unfair labor practice . . . affecting commerce." 29 U.S.C. § 160(a).

7. The Federal Debt Collection Procedures Act ("the FDCPA") provides the exclusive mechanism for the United States, its agencies, departments, commissions, boards, and other entities, *see* 28 U.S.C. § 3002(15), "to recover a judgment on a debt; or . . . to obtain, before judgment on a claim for a debt, a remedy in connection with such a claim." 28 U.S.C. § 3001(a).

8. Among such remedies, the FDCPA provides for the avoidance of transfers made or obligations incurred that are fraudulent as to a debt to the United States. 28 U.S.C. § 3301-07.

9. Defendant Cobalt has, since at least 2009, been a holding company organized for the primary purpose of securing and exercising coal mining rights in several U.S. States, including Virginia, West Virginia, and Kentucky.

10. Until April 2014, Michael Crowder ("Crowder") was the President and CEO of Cobalt.

11. At all material times prior to April 2014, and at certain times thereafter, Crowder was a supervisor and agent of Cobalt within the meaning of Sections 2(11) and 2(13) of the National Labor Relations Act ("NLRA"), 28 U.S.C. § 152 (11), (13).

12. Until April 2014, Robert Gillies ("Gillies") was the Chief Financial Officer of Cobalt.

13. At all material times prior to April 2014, Gillies was a supervisor and agent of Cobalt within the meaning of Sections 2(11) and 2(13) of the NLRA.

14. Prior to February 2014, defendant Al Kroontje was a director of Cobalt.

15. In February 2014, Kroontje resigned his directorship in Cobalt.

16. Tailwind Capital Partners, Inc. ("Tailwind"), a corporation organized under the laws of the province of Alberta, Canada, currently possesses a security interest on all assets of Defendant Cobalt, which it acquired from a third party company known as Sterling Holdings.

17. At the time it acquired that security interest, Kroontje was the president of Tailwind.

18. On September 17, 2013, Cobalt granted a security interest (referred to in documents, and here, as the "Kroontje Debenture") to Defendant Kroontje, securing prior amounts owed and authorizing Cobalt to borrow up to $7,000,000 in total debt.

19. Crowder executed the Kroontje Debenture on behalf of Cobalt.

20. On information and belief, Gillies approved Cobalt's entry into the Kroontje Debenture.

21. In April 2014, Tailwind, through Kroontje, placed Cobalt in receivership, and a company known as DAC Financial Group (1997), Ltd. ("DAC Financial") was appointed as receiver.

22. DAC Financial now asserts that expenses incurred in administering Cobalt's receivership constitute a first priority lien on Cobalt's assets under Alberta law.

23. At all material times since April 2014, Kroontje has been the Authorized Representative of the receiver of Cobalt and an agent of Cobalt within the meaning of Section 2(13) of the NLRA.

24. Since April 2014, Kroontje has had sole signatory authority over Cobalt's bank accounts and has been in possession and control of Cobalt's books and records.

25. At all material times, Kroontje has been an insider of Cobalt within the meaning of 28 U.S.C. § 3301(5).

### Background And Basis Of Cobalt's Debts To The Board

26. On August 27. 2013, the United Mine Workers of America (the "UMWA" or the "Union") filed a charge with the Board in case 09-CA-112146 alleging in pertinent part that Cobalt and two related entities had violated Section 8(a)(3) and (1) of the NLRA, 28 U.S.C. § 158(a)(3), (1), by refusing to recall 23 employees from layoff because those employees engaged in union activity.

4

27. The claims described in the charge accrued on May 29, 2013, the date Cobalt refused to recall the 23 employees from layoff.

28. On August 28, 2013, a copy of the charge was served upon defendant Cobalt.

29. On December 10, 2013, having found merit to the charge, the Regional Director of the Board's Region 9 issued a formal complaint and notice of hearing alleging that Cobalt had violated the NLRA.

30. On December 24, 2013, Cobalt filed a formal answer to the Board's complaint.

31. On February 3, 2014, Cobalt amended its answer.

32. On February 12, 2014, the unfair labor practice hearing in case 09-CA-112146 commenced.

33. On that date, Cobalt withdrew its answer, having been fully advised of the consequences of doing so, namely that the allegations of the Board's complaint would be deemed admitted.

34. On March 28, 2014, the Board administrative law judge hearing case 09-CA-112146 issued a decision finding that, in light of the withdrawal of Cobalt's answer, the allegations of the complaint were deemed admitted, and accordingly finding that Cobalt had unlawfully refused to recall 23 employees from layoff because of their union activity.

35. On May 2, 2014, the Board found that no exceptions had been timely filed to the judge's decision, and accordingly issued an order (the "First Board Order") adopting that decision as the decision of the Board, 28 U.S.C. § 160(c).

36. On July 21, 2014, the United States Court of Appeals for the Fourth Circuit issued a judgment and mandate ("First Judgment") in Case 14-1604, enforcing the First Board Order.

37. The First Board Order did not liquidate the amounts owed by Cobalt for backpay as a result of the allegations. A controversy subsequently arose concerning the amount of backpay owed under its terms.

38. Accordingly, on September 2, 2015, the Board issued and served upon Cobalt and its related entities a Compliance Specification alleging that Cobalt owed backpay in the total amount of $502,295.78.

39. Cobalt filed no timely answer to the Compliance Specification.

40. Accordingly, on December 14, 2015, the Board issued an order (the "Second Board Order") granting default judgment against Cobalt in the amount of $502,295.78.

41. On February 11, 2016, the United States Court of Appeals for the Fourth Circuit issued a judgment and mandate ("Second Judgment") in Case 16-1052, enforcing the Second Board Order.

### Relevant Collection Proceedings to Date

42. Until December 2015, Defendant Cobalt owned a subsidiary which held the right to mine coal from a property located in southwestern Virginia ("Virginia Mine").

43. Defendant Cobalt's former subsidiary was previously known as Cobalt Coal Corp. Holdings, Inc., and is now known as Clinchco Met Coal, Inc.

44. In 2015, Defendant Cobalt transferred the shares of Clinchco Met Coal, Inc. to a third-party corporation called G.E.M. Holdings U.S. Corp. ("GEM"), a Virginia subsidiary of a United Kingdom corporation, in return for rights of payment over an extended period of time.

45. Since 2015, Cobalt has from time to time received payments on account of its contract with GEM.

46. On June 3, 2016, the Board initiated garnishment proceedings in the United States District Court for the Southern District of West Virginia, Case No. 16-mc-33, against a wage bond posted by Cobalt's subsidiary Cobalt Coal Corp. Mining, Inc., held by Pioneer Community Bank on authority of the West Virginia Department of Labor.

47. The Board's application for a writ of garnishment was granted, its proposed writ was issued and $30,151.21 was successfully garnished and paid to employees in partial satisfaction of the Second Judgment.

48. Since that seizure, Cobalt's rights of payment from GEM have been Cobalt's only known valuable asset.

49. On October 25, 2017, the remainder of the Judgment as well as postjudgment interest and applicable statutory surcharges remaining unsatisfied, the Board sought a writ of execution from this Court to execute upon Cobalt's rights of payment under its contract with GEM and its associated "chose in action" (right to sue) GEM for such payments, as well as any other assets that could be found. That writ was sought in Case No. 17-mc-18.

50. The writ was issued by this Court on November 1, 2017.

51. The writ of execution and associated notice of levy was served upon Cobalt, through Kroontje, on November 2, 2017.

52. Accordingly, an execution lien was created over the assets of Cobalt in favor of the Board dating from November 2, 2017. 28 U.S.C. § 3203(b).

53. The Board now seeks an order deeming the Kroontje Debenture partially fraudulent as to the United States and avoiding certain transactions to the Board's claim embodied in the execution lien created in Case No. 17-mc-18.

### COUNT ONE (Transfers made while insolvent without receiving reasonably equivalent value) 28 U.S.C. § 3304(a)(1)

54. The Board repeats and realleges the facts detailed in paragraphs 1-53 as though fully set forth herein.

55. In about February 2014, Cobalt borrowed $1,735,000 in two transactions under the terms of the Kroontje Debenture to pay amounts owed to Sterling Holdings.

56. Those funds were paid to Sterling Holdings.

8

Case 2:19-cv-00041-JPJ-PMS   Document 1   Filed 09/17/19   Page 8 of 11   Pageid#: 8

57. The Sterling Holdings security interest was not discharged. Instead, as noted above, ownership of it was transferred to Tailwind.

58. Accordingly, in February 2014, Cobalt incurred debt to Kroontje in the amount of $1,735,000 without receiving any value in return.

59. On March 17, 2014, Cobalt borrowed $1,400 under the terms of the Kroontje Debenture.

60. However, that $1,400 was used to pay expenses of receivership and was charged as a receivership expense payable to DAC Financial.

61. Accordingly, Cobalt incurred the $1,400 liability without receiving any value in return.

62. At all relevant times, and at all times since January 1, 2014, the sum of Cobalt's debts was greater than the sum of its assets at a fair valuation.

63. At all relevant times, and at all times since January 1, 2014, Cobalt was generally not paying debts as they became due.

### COUNT TWO (Transfer with knowledge of likely business failure)
### 28 U.S.C. § 3304(b)(2)

64. The Board repeats and realleges the facts detailed in paragraphs 1-63 as though fully set forth herein.

65. At the time it incurred the debts set forth in paragraphs 55 and 59, Cobalt's remaining assets were unreasonably small in relation to the business it was engaged in.

66. In the alternative, at the time it entered into the debts set forth in paragraphs 55 and 59, Cobalt intended to incur, or believed or reasonably should

9

have believed that it would incur, debts beyond its ability to repay as they became due.

## PRAYER FOR RELIEF

67. 28 U.S.C. Sec. 3013 provides:

**Modification or protective order; supervision of enforcement**

The court may at any time on its own initiative or the motion of any interested person, and after such notice as it may require, make an order . . . , extending, or modifying the use of any enforcement procedure under this chapter.

68. 28 U.S.C. § 3306 provides:

**Remedies of the United States**

**(a) In general.**—In an action or proceeding under this subchapter for relief against a transfer or obligation, the United States . . may obtain—

   (1) avoidance of the transfer or obligation to the extent necessary to satisfy the debt to the United States;

   (2) a remedy under this chapter against the asset transferred or other property of the transferee; or

   (3) any other relief the circumstances may require.

69. The Board accordingly requests:

   a. that $1,736,400 of the principal of the Kroontje Debenture, and any resulting penalties, interest, or other amounts owed by Cobalt to Kroontje thereunder as a consequence, be avoided;

   b. such further relief as the court may deem to be just and proper.

National Labor Relations Board

WILLIAM MASCIOLI
Assistant General Counsel
(202) 273-3746

HELENE LERNER
Supervisory Attorney
(202) 273-3738

s/ Paul A. Thomas
PAUL A. THOMAS
Trial Attorney
Tel: (202) 273-3788
paul.thomas@nlrb.gov

s/ Molly G. Sykes
MOLLY G. SYKES
Trial Attorney
Tel: (202) 273-1747
molly.sykes@nlrb.gov

Contempt, Compliance & Special Litigation Branch
1015 Half Street, SE
Washington, DC 20003
Fax: (202) 273-4244

Dated: September 17, 2019